## FIRST ENGLISH LUTHERAN CHURCH OF OKLAHOMA CITY et al. v. EVANGELICAL LUTHERAN SYNOD OF KANSAS AND ADJACENT STATES.

### No. 2670.

Circuit Court of Appeals, Tenth Circuit.

May 12, 1943.

Rehearing Denied June 30, 1943.

702

J. D. Lydick, of Oklahoma City, Okl., for appellants.

James E. Grigsby, of Oklahoma City, Okl., for appellee.

Before BRATTON, HUXMAN, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is a church controversy. The Evangelical Lutheran Synod of Kansas and Adjacent States, an ecclesiastical corporate entity chartered and existing under and by virtue of the laws of Kansas, is an orthodox synod in the United Lutheran Church in America; and Midwest Synod is likewise an orthodox synod in the United Lutheran Church. The two synods overlap in some territory, the former having member churches in Kansas, Oklahoma, and Missouri, and the latter having member churches in Kansas, Oklahoma, Missouri, Iowa, Nebraska, South Dakota, Colorado, and Texas. The First English Lutheran Church of Oklahoma City is an incorporated religious society of the Lutheran faith in Oklahoma City and for many years was a member of the Synod of Kansas. But a division occurred within the church, and at a meeting called for the transaction of business, the members by a plurality of those present and voting adopted a resolution withdrawing from the Synod of Kansas and affiliating with the Midwest Synod. Both synods were advised of the action taken; the Midwest Synod announced its acceptance of the church; but the Synod of Kansas refused to give its consent to the transfer, suspended Fred H. Bloch, pastor of the church, as a minister, recognized the faction in the congregation opposed to the change in synodical affiliation, and later instituted this action against the church, Bloch, and E. C. Doerr and others constituting the Board of Deacons and Trustees of the church, to enjoin them from exercising any control or dominion over the church edifice and parsonage, from affiliating the church with the Midwest Synod, from paying over any money to that synod, and from interfering with any minister designated by the Synod of Kansas in the conduct of worship in the church. The cause was submitteed to the court on the facts admitted in the pleadings, the stipulated facts, and the testimony of two witnesses. The court granted the injunction substantially as sought, and by order subsequently entered provided that pending appeal or until further ordered, the respective factions should have the exclusive use of the church during alternate weeks for the purpose of conducting religious services. The defendants appealed.

Extended argument is submitted in respect of the power of the church to withdraw from the Synod of Kansas without its consent. A civil court will not review acts of a religious organization relating solely and exclusively to an internal ecclesiastical affair for the sole purpose of ascertaining whether they are regular or in accordance with the polity, discipline or usages of the organization. Cage v. Cans-

ler, 119 Okl. 36, 248 P. 612; Id., 130 Okl. 70, 265 P. 112; Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666; Bouldin v. Alexander, 15 Wall. 131, 21 L.Ed. 69; Shepard v. Barkley, 247 U.S. 1, 38 S.Ct. 422, 62 L.Ed. 939; United States v. First Colored Baptist Church, 56 App.D.C. 324, 13 F.2d 296; Nance v. Busby, 91 Tenn. 303, 18 S.W. 874; Prickett v. Wells, 117 Mo. 502, 24 S. W. 52; Connoley v. Smith, 255 Ky. 630, 75 S.W.2d 222; Woodrum v. Burton, 88 W.Va. 322, 107 S.E. 102; McClusker v. Rakestraw, 164 Ga. 30, 137 S.E. 394; Mitchell v. Church of Christ at Mt. Olive, 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; State v. Tulane Ave. Baptist Church, La. App., 144 So. 639; Moustakis v. Hellenic Orthodox Soc., 261 Mass. 462, 159 N.E. 453; Kompier v.. Thegza, 213 Ind. 542, 13 N.E.2d 229; Calvary Baptist Church of Port Huron, Mich. v. Shay, 292 Mich. 517, 290 N.W. 890; King v. Smith, 106 Kan. 624, 189 P. 147.

■ A court will exercise its equitable jurisdiction in a church controversy for the protection and preservation of a civil or property right—ordinarily to prevent an unauthorized alienation of property or the wrongful diversion of a church edifice or fund to a perverted use in violation of its dedication or trust. In such a case the jurisdiction of the court to adjudge an ecclesiastical matter results as a mere incident to the determination of the civil or property right. Cape v. Moore, 122 Okl. 229, 253 P. 506; Watson v. Jones, supra; Bouldin v. Alexander, supra; Shepard v. Barkley, supra; Purcell v. Summers, 4 Cir., 126 F.2d 390; Nance v. Busby, supra; Prickett v. Wells, supra; Mitchell v. Church of Christ at Mt. Olive, supra; Mattson v. Saastamoinen, 168 Minn. 178, 209 N.W. 648; Hazelip v. Doyel, 267 Ky. 477, 102 S.W.2d 321; Stallings v. Finney, 287 Ill. 145, 122 N.E. 369; Guin v. Johnson, 230 Ala. 427, 161 So. 810; Dix v. Pruitt, 194 N.C. 64, 138 S.E. 412.

But in most if not all the cases in which a civil court has exerted its equitable jurisdiction to protect a property right, the action was instituted by the trustees or other officers of the church having legal title to the property, or by members of a faction in the church who sued for themselves and as members of a class having a beneficial interest in the property. That was not done here. The Synod of Kansas alone brought this action solely in its own behalf. The edifice and other property in question belongs to the church at Oklahoma City, a corporation. Title has never been vested in the Synod of Kansas. And the synod does not have any beneficial interest in the property which would be violated by the transfer of synodical affiliation. In the early years of the existence of the church, the synod made financial contributions to the church, but it is not alleged or shown that as the result of such contributions it acquired or has a lien upon the property or other beneficial interest in it.

■ Diversity of citizenship is relied upon for federal jurisdiction. In an action of this kind the value of the right which plaintiff seeks to protect is the yardstick with which to measure the question of jurisdiction. Glenwood Light & Water Co. v. Mutual Light & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Purcell v. Summers, supra. It is alleged and admitted that the church property in Oklahoma City is of the reasonable value of $65,000. But, as already determined, it affirmatively appears from the face of the complaint that the Synod of Kansas does not have any right in such property which it may call upon a court of equity to protect against the change in synodical affiliation. In 1940 the church in Oklahoma City contributed to the Synod of Kansas slightly more than $1,400 for benevolences; and it is alleged and admitted that as the result of the change in synodical affiliation approximately that amount will be diverted each year to the Midwest Synod, and that in five years the aggregate amount of such contributions will be in excess of $7,000. Sometimes payments to be made in the future may constitute the amount requisite for the purpose of jurisdiction under the diversity provision in the statute, even though they are not in the nature of a technical debt. Thompson v. Thompson, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347; Brotherhood v. Pinkston, 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219. But here the church is not under any legal or actionable obligation to continue to make these contributions; it may discontinue making them at its election; and the Synod of Kansas cannot exact them under penalty of law. They are essentially uncertain, contingent, and speculative, and therefore cannot constitute the amount in controversy requisite to federal jurisdiction.

The judgment is reversed and the cause remanded with direction to dismiss the action.